UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEDLINE INDUSTRIES, INC., an Illinois Corporation,<br><br>Plaintiff,<br>v.<br><br>STRATEGIC COMMERCIAL SOLUTIONS, INC., a Canadian corporation, CAPITAL PAYMENT SYSTEMS, LLC, a Delaware limited liability company, WORLD WIDE MERCHANTS, LLC, a Florida limited liability company, PRIME TIME SOLUTIONS, INC., a Canadian corporation, 9120-3140 QUEBEC INC., a Canadian corporation, GROUPE CLADDAGH INC., a Canadian corporation, 9133-9069 QUEBEC INC., a Canadian corporation, 9154-4619 QUEBEC, INC., a Canadian corporation, THOMAS WONG, an individual, and MOHAMMED ABUKHALID, an individual,<br><br>Defendants. | No. 07 C 2783<br><br>Judge Ruben Castillo<br><br>Magistrate Judge Mason |

**DEFENDANT STRATEGIC COMMERCIAL SOLUTIONS, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Plaintiff Medline Industries, Inc.'s ("Medline") Second Amended Complaint is legally deficient pursuant to Rules 12(b)(2) and 12(b)(6), Fed. R. Civ. P.[1] First, this Court thus lacks personal jurisdiction over Defendant Strategic Commercial Solutions (SSC) Inc. ("SCS") because, contrary to Plaintiff's conclusory allegation that SCS has "continuous and systemic general business contacts with Illinois," SCS has *zero* business contacts with the State of Illinois.

---

[1] Consistent with this Court's standing order, prior to filing this motion, counsel for SCS, David L. Ter Molen, sent counsel for Plaintiff a letter on January 24, 2008 stating its intent to filing the instant motion and setting forth the legal and factual bases in that regard. Additional authority and argument in support of the instant motion was sent to opposing counsel on January 29. No resolution of the issues was reached by the parties before the filing of this motion.

And the customer service calls that it *received* from Illinois are unrelated to this action and do no remotely rise to the level of minimum contacts required under the due process clause.

Alternatively, each of the six claims in Plaintiff's Second Amended Complaint should be dismissed with prejudice with respect to SCS because they do not state a cause of action upon which relief can be granted. The primary targets of Plaintiff's revised pleading are two "telemarketers" who allegedly sold a product that infringed upon Plaintiff's trademark; and Plaintiff's fail to assert a cognizable claim against SCS in its effort to impose direct and/or secondary liability because SCS provided customer service functions for the alleged infringers.

## ARGUMENT

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER SCS.

On June 6, 2007, this Court dismissed, *sua sponte*, Plaintiff's original complaint for its failure to establish jurisdiction or venue as to the non-resident defendants (one of which was SCS). In both Amended Complaints, Plaintiff added the following allegation in this regard:

> 15. This court has general personal jurisdiction over Defendants SCS, Capital Payment Systems, and World Wide Merchants because of their continuous and systemic general business contacts with Illinois. This court has specific personal jurisdiction over all of the defendants because they knowingly harmed an Illinois trademark holder and directed their activities to banks in Illinois, and because this litigation results from the injuries that arise out of or relate to those activities.

2nd Amend. Compl. ¶ 15, Amend. Compl. ¶ 15. But this cursory allegation is a legal conclusion that is insufficient to establish personal jurisdiction over SCS. *See Medco Research Inc. v. Fujisawa Pharm. Co., Ltd.*, No. 93 C 2705, 1994 WL 87453, at *3 (N.D. Ill. Mar.16, 1994) (holding that conclusory allegations were insufficient to allow court to assert personal jurisdiction over Fujisawa Japan); *Integrated Bus. Info. Serv. v. Dun & Bradstreet Corp.*, 714 F. Supp. 296, 299 (N.D. Ill. 1989) (only facts presented in complaint must be accepted as true for

2

purposes of a motion to dismiss for lack of personal jurisdiction and "'doing business' is a legal conclusion").

Additionally, it is Plaintiff's burden to demonstrate the existence of personal jurisdiction. *RAR, Inc. v. Turner Diesel*, 107 F.3d 1272 (7th Cir. 1997). And when a defendant challenges the personal jurisdiction of the Court by way of a motion to dismiss pursuant to Rule (12)(b)(2), the burden remains with the plaintiff to establish jurisdiction over the defendant. *DiStefano v. Carozzi N. Am. Inc.*, 286 F. 3d 81 (2d Cir. 2001). In deciding the motion to dismiss, the court may receive and consider affidavits from both parties. *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 208 F. Supp. 2d 918, 922 (N.D. Ill. 2002) (citing *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir.1987)). Although conflicts in the pleadings and affidavits are to be resolved in the plaintiff's favor, a court should accept as true facts contained in the affidavits that are not refuted by the plaintiff. *Cont'l Cas. Co. v. Marsh*, No. 01 C 0160, 2002 WL 31870531, at *2 (N.D. Ill. Dec. 23, 2002) (citing *RAR, Inc.*, 107 F.3d at 1276).

Personal jurisdiction in a trademark action requires a showing of constitutionally-sufficient minimum contacts with the chosen jurisdiction. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980) (where the state's long-arm statute is co-extensive with minimum due process requirements, defendant must have sufficient "minimum contacts" "such that [it] should reasonably anticipate being haled into" the particular district court). The minimum-contacts test can be met by showing that there is either general jurisdiction or specific jurisdiction. *See Stenger v. Leadenhall Bank & Trust Co. Ltd.*, No. 02 C 8655, 2004 WL 609795, at *4 (N.D. Ill. Mar. 23, 2004). Specific jurisdiction must be based on activities in the forum which "arise[] out of" or "relate to" the cause of action. *Burger King v. Rudzewicz*, 471 U.S. 462, 476, (1985). General jurisdiction is somewhat broader and refers to situations where the defendant has

3

"continuous and systematic" business contacts with the forum state such that jurisdiction exists even when the cause of action has no relationship with the case contacts. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). *See also Stengser*, 2004 WL 609795, at *4 (general jurisdiction exists when "a non-resident defendant is doing business in Illinois so as to maintain a presence here.").

Here, there is neither general nor specific jurisdiction over SCS because it has no business "contacts" with the State of Illinois, with the only possible connection with this forum being customer service calls it has received that are unrelated to the instant cause of action. As set forth in the Declaration of Neil Haboush, the president and owner of SCS:

1. SCS is a foreign corporation with offices and employees located in Quebec, and it has no offices or employees located anywhere in the United States, including Illinois (Haboush Decl. ¶ 5 attached hereto as Exhibit A);

2. SCS does not offer any services in Illinois, it has no business dealings or contracts with any entity located in Illinois, and it does not have a license to do business in Illinois. Additionally, SCS has never brought suit, or been subject to any suit, in any federal or state court located in Illinois (*id.* ¶ 6);

3. No employee of SCS has ever conducted any business in Illinois, entered into any transactions in Illinois, solicited any business in Illinois on behalf of SCS, or otherwise traveled to Illinois for any reason related to SCS' business operations (*id.* ¶¶ 7-8);

4. In providing third-party customer service, SCS receives incoming telephone calls and only rarely makes any outbound phone calls (*id.* ¶ 9);

5. In handling third-party customer service calls, SCS employees identify themselves as "customer service," "customer care relations", etc. and never identify themselves using the name of the merchant from whom a customer actually purchased a product or service (*id.* ¶ 10); and

6. SCS never provided any customer service relating to the Medline Savings program for any customer located within Illinois. (*Id.* ¶ 14).

Accordingly, general jurisdiction does not exist because any business "contacts" with this forum are "inadvertent, trivial or sporadic" rather than "intentional, substantial and continuous."

4

*Stengser*, 2004 WL 609795, at *4. And under either theory, SCS does not have such minimum contacts with Illinois such that it can be deemed as having voluntarily sought the benefits and protections of the laws of this State. *See, e.g., LaSalle Nat'l Bank v. Vitro, Sociedad Anonima de Capital Variable*, 85 F. Supp. 2d 857, 862 (N.D. Ill. 2000) (finding no jurisdiction on the basis of a website that did not allow for direct sales, but did offer users access to on-line catalogs and gave them the ability to interact directly with defendant's customer service representatives); *O'Connor v. Sandy Lane Hotel Co.*, No. 04-2436 2005 WL 994617, *4 (E.D. Pa. Apr. 28, 2005) ("there can be no dispute that the maintenance of a toll-free number is not a forum contact significant or continuous enough to ground general jurisdiction"), *rev'd on other grounds*, 496 F.3d 312 (3d Cir. 2007); *cf. Compass Worldwide, Inc. v. Pinnacle Equip., Inc.*, 280 F. Supp. 2d 641, 644 (W.D. Ky. 2003) ("Compass cites no authority for the proposition that providing a customer service telephone number is sufficient to establish personal jurisdiction. The court is dubious of such a proposition.").

Finally, with regard to specific jurisdiction, Plaintiff's cause of action arises out of the alleged infringement of its "Medline" trademark and there was no use of that mark by SCS. (Haboush Decl. ¶¶ 10, 12-14, 17-19.) Plaintiff does not allege otherwise, nor odes Plaintiff allege that SCS used that mark *in Illinois*. Moreover, during the eleven months that SCS provided customer service to the Medline Savings program, it never handled any customer located in Illinois relating to that program. *Id.* ¶ 14. Thus, no grounds exist for a finding of specific jurisdiction. *See LaSalle Nat'l Bank*, 85 F. Supp. 2d at 861 (noting that, although specific jurisdiction requires a lesser degree of contacts than general jurisdiction, the "catch .... [is that] [t]he claims in the complaint must relate to, or arise out of, the contacts with the forum."). And while SCS did receive, at the toll-free number established for the Medline

Savings program, phone calls from seventeen (17) different phone numbers within the State of Illinois, none of those calls were from actual customers of that program. *Id.* ¶ 15 and Exhibit 1 thereto. Indeed, three of these phone numbers – (312) 554-8008, (312) 692-0480, and (312) 692-0481 – are from the law firm of *opposing counsel* and can hardly serve as a predicate for personal jurisdiction.

## II. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiff's Second Amended Complaint, despite an array of allegations about SCS's business operations, fails to connect those allegations with any cognizable claim or otherwise state a cause of action against SCS for which relief can be granted.

### A. Plaintiff's Revised Allegations Against SCS.

Plaintiff's Second Amended Complaint alleges that two persons, Thomas Wong and Mohammed Abukhalid, operated a telemarketing operation using the name "Medline Savings" that allegedly infringed upon Plaintiff's trademark. 2nd Amend. Compl. ¶¶ 24-33, 51.[2] The primary targets of the revised pleading are these individuals and two companies they allegedly controlled, 9121-3140 Quebec Inc. and 9133-9069 Quebec Inc. *Id.* Plaintiff's asserted damages in this action all flow from these parties' alleged infringement Medline's trademark. *Id.* ¶15, 23.

The Second Amended Complaint then seeks to include six companies, including SCS, that had alleged dealings with the accused infringer's business operation.[3] With respect to SCS, Plaintiff's allegations in this regard can be summarized as follows:

---

[2] In its initial Complaint, Plaintiff's primary target was SCS, while the First Amended Complaint targeted all of the co-defendants as being part of the "Medline Savings telemarketing operation" without properly distinguishing each parties' alleged wrongdoing.

[3] Specifically, Plaintiffs name SCS, two payment processing companies that collected payments on behalf of the alleged infringers (Capital Payment and World Wide), a company referred to as Identacall (9154-4619 Quebec Inc.) that worked to record the payment authorization portions of the telemarketing calls, a company that apparently transferred certain monies between the parties (Groupe Claddagh), and a company named Prime Time Solutions that actually sent the allegedly infringing product.

- SCS provided customer service to "Medline Savings" consumers and identified "itself to consumers as 'Customer Service' or 'Client Care Relations.'" *Id.* ¶ 41.

- SCS received customer files from the Medline Savings telemarketers about new customers. *Id.* ¶ 34.

- SCS listened to the "Identacall verification recordings" of phone calls to determine if it was a valid payment authorization. *Id.* ¶ 35.

- SCS forwarded customer files with valid payment authorizations to one of two payment processors knowing that such payment processors would proceed to obtain funds from those customers' accounts. *Id.* ¶¶ 35-36.

- SCS would also forward "approved" customer information to co-defendant "Prime Time Solutions to fulfill the consumers' orders ...." *Id.* ¶ 38.

- SCS received complaints from Medline Savings consumers and continued to provide customer service to Medline Savings consumers after it assertedly "knew or should have known" that the actual Medline Savings telemarketers were infringing Plaintiff's trademark and/or allegedly committing telemarketing fraud. *Id.* ¶¶ 43-44.

With the exception of the last bullet point, the foregoing is generally accurate. SCS provided third-party customer service to a merchant for the "Medline Savings" program for a period of 11 months. (*See* Haboush Decl. at ¶¶ 12-13.) SCS answered incoming phone calls from that merchant's customers (as it does for all such calls) as "Customer Service." Id ¶ 10. Significantly, there is nothing wrong with such conduct standing alone (putting aside the ominous and misleading language in the pleading)[4] hence the allegation in the last bullet point that SCS continued to work with this merchant after it "should have known" that it was infringing Plaintiff's trademark or somehow committing a fraud on consumers.[5]

---

[4] Such terminology includes misleading allegations that SCS "instructed" and/or directed" payment processors to collect funds and "directed" the delivery of the infringing products. 2nd Amend. Compl. ¶¶ 35-36, 38.

[5] No "conspiracy" claim has been alleged and the Second Amended Complaint is otherwise devoid of the specificity required to allege that SCS conspired with the actual "Medline Savings telemarketers." *See, e.g., Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999); *Morgan v. GTECH Corp.*, No. 90 C 238, 1990 WL 251900, at *3 (N.D. Ill. Dec. 19, 1990).

7

Based on these allegations, Plaintiff asserts claims against SCS for trademark infringement, contributory trademark infringement, unfair competition, trademark "dilution" under the Lanham Act, and a claim under the Illinois Deceptive Trade Practices Act (respectively, Counts II through VI). All of these claims and Plaintiff's related allegations of damages flow from the alleged infringement Plaintiff's "Medline" trademark by Wong and Abukhalid. *See, e.g.,* 2nd Amend. Compl. ¶¶ 56, 61, 66-69, 71, 75-77. The other claim against SCS (Count I for providing "substantial assistance" under the Telemarketing and Consumer Fraud and Abuse Protection Act) is likewise deficient for these same reasons as well as others.

**B.  A Plaintiff Must Provide Fair Notice to a Defendant of the Claims Against it and Allegations Plausibly Suggesting a Right to Relief.**

The United States Supreme Court recently revisited the standards which a court must apply in deciding a Rule 12(b)(6) motion. *Bell Atlantic Corp. v. Twombley*, 550 U.S. __, 127 S.Ct. 1955 (May 21, 2007). In so doing, the Court disapproved of this famous quotation:

> [A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson*, 335 U.S. 41, 45-46 (1957), *quoted in Bell Atlantic*, 127 S. Ct. at 1968. *Bell Atlantic* has now made clear that Fed.R. Civ. P. 8(a) requires that every plaintiff plead facts which, taken as true, establish affirmative grounds for relief:

> A plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [citation omitted]. Factual allegations must be enough to raise a right to relief above the speculative level.

*Id.*, 127 S.Ct. at 1964-65. A plaintiff's burden is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* at 1959 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, (1957)). This includes setting forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

In place of the *Conley* formulation, the Supreme Court in *Bell Atlantic* set forth two hurdles that must be cleared to survive a Rule 12(b)(6) motion to dismiss:

> First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests".... Second, its allegations must *plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court.*

*EEOC v. Concentra HealthServs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (emphasis added, citations omitted).

### C. Medline's Trademark-Related Claims (Counts II -VI) Are Legally Deficient.

Based on the foregoing legal standard and the specific allegations in the Second Amended Complaint, Plaintiff's claims against SCS are revealed as legally deficient and a clear example of over-reaching. First, Count II attempts to state a claim for direct trademark infringement of Plaintiff's "Medline" trademark against six of the ten defendants. In this regard, Plaintiff simply alleges that "Defendants' use of the MEDLINE trademark as alleged herein is likely to cause confusion, to cause mistake, or to deceive consumers as to the source of origin of Defendants' goods and services." 2nd Amend. Compl. ¶ 56. But as set forth above, Plaintiff never alleges that *SCS* "used" the "Medline" trademark in commerce (and SCS never did in fact "used" the "Medline" mark) and this claim therefore fails as a matter of law. *See* 15 U.S.C. § 1127 (defining "use in commerce" as being, *inter alia*, use "in the ordinary course of trade" when affixed to "goods" or when "used or displayed in the sale or advertising of services"); *see also Rescuecom Corp. v. Google*, 456 F. Supp. 2d 393 (N.D.N.Y 2006) (granting Google's motion to dismiss, finding that "in the absence of allegations that defendant placed plaintiff's trademark on any goods, displays, containers, or advertisements, or used plaintiff's trademark in any way that indicates source or origin, plaintiff can prove no facts in support of its claim which would demonstrate trademark use").

Count III for "contributory trademark infringement" is equally flawed. The key allegation in this regard is that, "[o]n information and belief, with direct control and monitoring of the instrumentality used by Wong and Abukhalid to infringe Medline's trademark, [SCS] continued to supply their services to Wong and Abukhalid, even though they knew or should have known of such infringement." 2nd Amend. Compl. ¶ 61. But the doctrine of contributory trademark infringement does not extend to a party such as SCS with regard to its interactions with the alleged direct infringers.

Contributory trademark infringement under the Lanham Act is a narrowly construed doctrine.[6] In *Hard Rock Cafe Licensing Corp. v. Concession Services., Inc.*, 955 F.2d 1143 (7th Cir. 1992), the Seventh Circuit reviewed the potential applicability of this legal theory to a flea market operator as to the direct trademark infringement of flea market vendors. In so doing, the Seventh Circuit recognized that the theory of contributory trademark infringement had typically been applied only to a manufacturer or distributor that "'intentionally induces another to infringe a trademark, or ... continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement.'" *Id.*, 1148, quoting *Inwood Labs. Inc. v. Ives Labs. Inc.*, 456 U.S. 844, 854, (1982). Thus, with respect "to people who do not actually manufacture or distribute the good that is ultimately palmed off as made by someone else," the Seventh Circuit "turned to the common law [with respect to torts] to guide our inquiry into the appropriate boundaries of liability." *Id.* (noting that a temporary help service should "not be liable if it furnished [the direct infringer] the workers he employed to erect his stand, even if the help service knew that [the direct infringer] would sell counterfeit goods."). The Court then stated

---

[6] For purposes of this motion, SCS assumes, *arguendo*, that the "Medline Savings" mark allegedly used by the "Medline Savings telemarketers" infringes the Plaintiff's MEDLINE mark.

that, as shown in the Restatement of Torts, the defendant was either a landlord or licensor and that the common law imposed the same duty on it as a manufacturer. *Id.* at 1148-49.

Although the Court in *Hard Rock* found that a flea market operator, whether viewed a licensor or landlord, was like a distributor of manufacturer, subsequent cases make clear that this expansion was "premised on a defendant's direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *SB Designs v. Reebok Int'l Ltd.*, 338 F. Supp. 2d 904, 913 (N.D. Ill. 2004). *See also Lockheed Martin Corp. v. Network Solutions, Inc.*, 52 U.S.P.Q.2d 1481, 1484 (9th Cir. 1999) ("[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark permits the expansion of *Inwood Lab.*'s 'supplies a product' requirement for contributory infringement.").[7]

Plaintiff now alleges (in light of arguments raised in SCS's previously-filed Motion to Dismiss, no doubt) "on information and belief," and in conclusory terms, that "with direct control and monitoring of instrumentality used by [Wong and Abukhalid] to infringe Medline's trademark, even though they knew or should have known of such infringement." 2nd Amend. Compl. ¶ 61. But based on Plaintiff's factual allegations, SCS did not control or otherwise monitor the allegedly infringing actions of the actual telemarketers. (*See* Haboush Decl. ¶ 19.) And the "instrumentality" of the alleged infringement in this case is the actual telemarketing operation overseen by Wong and Abukhalid, including their allegedly infringing phone calls to consumers. Indeed, to let this claim move forward would significantly expand contributory trademark infringement into the realm of liability disapproved of in *Hard Rock* because the common law imposes no duty on SCS similar to that of a manufacturer. Accordingly, Plaintiff

---

[7] Significantly, in *SB Designs*, defendant Reebok offered testimony that it did not exercise any control over any of the direct infringer's conduct or materials while the plaintiff disputed that claim but offered no evidence to the contrary. *Id.* The district court thus concluded that "an extension of the doctrine beyond 'products' is not warranted

11

has not, and cannot, state a cause of action against SCS for contributory trademark infringement.[8]

Counts IV through VI of Plaintiff's Second Amended Complaint fail to state a cause of action against SCS upon which relief can be granted for the same reasons as its flawed trademark claims against SCS. First, with respect to Count V for "Trademark Dilution Under The Lanham Act," there is no recognized claim for "contributory dilution" nor has any such claim been alleged. And any theory of "direct" trademark dilution fails – like its claim for direct trademark infringement – because SCS has not used the "Medline" trademark in commerce. *See* 15 U.S.C. § 1125(c)(1) (trademark dilution claim limited to injunctive relief against a person who "commences *use of a mark or trade name in commerce* that is likely to cause dilution by blurring or dilution by tarnishment of [a] famous mark.").

Finally, Counts IV (unfair competition) and VI (Deceptive Trade Practices Act) are both predicated on SCS's asserted use of the "Medline" trademark and is thus as equally deficient as Plaintiff's claims under the Lanham Act. *See, e.g., Bob Creeden & Assocs., Ltd. v. Infosoft, Inc.*, 326 F. Supp. 2d 876, 880 (N.D. Ill. 2004) (after dismissing Lanham Act claim, court proceeded to dismiss claim under the Illinois Consumer Fraud and Deceptive Business Practices Act and the Deceptive Trade Practices Act because "[i]n Illinois, courts resolve unfair competition and deceptive practices claims according to the principles set forth in the Lanham Act."). *See also SB Designs*, 338 F. Supp. 2d at 914.

---

in the instant case because there is no evidence from which a reasonable jury could infer that Reebok controlled or monitored the contents of the" allegedly infringing website or promotional materials. *Id.*

[8] Even were the Court to determine that the allegations regarding SCS are sufficient to sustain the Second Amended Complaint under Rule 12(b)(6), it does not withstand scrutiny when a few actual facts are considered. As shown by the Declaration of Neil Haboush, none of the alleged wrongdoing is attributable to SCS. All such acts are the responsibility of independent parties beyond the direction and control of SCS. (*See* Haboush Decl. ¶ 19.) To the extent that the Court declines to dismiss the complaint for the absence of any factual allegation connecting the alleged wrongdoing with SCS, we invite consideration of these facts and conversion of the motion under Rule 56.

### III. PLAINTIFF'S HAVE NO STANDING UNDER THE "TELEMARKETING ACT."

Knowing that its trademark-related claims against SCS are without merit, Plaintiff's have added a new claim under the Telemarketing And Consumer Fraud And Abuse Prevention Act (the "Telemarketing Act," 15 U.S.C. §§ 6102(a)(2) and 6104(a) and 16 C.F.R. § 310.3(b)). In this regard, Plaintiff necessarily again relies on a contributory theory of liability – that SCS "provided substantial assistance and support to [the actual telemarketers] despite knowing or consciously avoiding knowing that [those persons] were engaged in ... deceptive and abusive telemarketing practices." 2nd Amend. Compl. ¶ 52. Significantly, the actual "fraud" alleged to have been committed by the telemarketers is that they "engaged in a pattern and practice of deceptive and abusive telemarketing by misrepresenting the actual cost of the 'Medline Savings' package, fraudulently claiming to be calling from consumers' banks in order to obtain their bank account information causing consumers' bank accounts to be debited without their actual authorization, and failing to establish proper mechanisms by which consumers could obtain a refund." *Id.* ¶ 51. This claim is legally deficient for multiple reasons.

First, Medline lacks standing to assert a private cause of action under the Telemarketing Act because the asserted fraud allegedly damaged third-party consumers, not Medline. And a private cause of action can only be brought under the act by a "person adversely affected by any pattern or practice of telemarketing which violates" the act and has suffered more than "$50,000 in actual damages," individually. 15 U.S.C. § 6104.[9] Indeed, the Senate Report on the Telemarketing Act states as follows with respect to the private cause of action:

---

[9] *See also* H.R. Rep. 103-20 ("It is the intention of the Committee that the damages which may be considered for purposes of meeting the $50,000 threshold are actual, as opposed to punitive, damages. Additionally, more than one person may not aggregate damages for purposes of meeting this threshold. Rather, each person must be able to allege $50,000 in actual damages.").

13

> This section permits injured persons, including financial institutions, to bring actions to enforce the rules promulgated under the reported bill, if their actual damages equal or exceed $50,000. Subsection (a) states that persons who may bring actions under this legislation *are those who actually purchased goods or services or are obligated to pay for goods or services, or financial institutions, or member organizations comprising financial institutions, such as credit card companies.* *** The committee intends that the damages which may be considered for purposes of meeting the $50,000 threshold are actual, as opposed to punitive damages. Moreover, several plaintiffs or financial institutions may not aggregate damages for purposes of meeting this threshold. Rather, each person or financial institution must be able to allege $50,000 damage in its own right.

*See* S. Rep. No. 103-80, 1993 WL 241282, at **12-13. Here, Plaintiff clearly is not a "financial institution" or actual customer of the "Medline Savings" program.[10]

In other words, consistent with Plaintiff's allegations, the persons allegedly harmed were certain third-party consumers who purchased the "Medline Savings" program. And Plaintiff, Plaintiff has not identified (and cannot identify) any "actual damages" to it *resulting from the alleged telemarketing fraud*. Rather, Plaintiff's only alleged damages are its statutory damages under the Lanham Act, which have no nexus with the telemarketing fraud alleged by Plaintiff. Thus, Plaintiff lacks standing to bring a private cause of action under the Telemarketing Act.

Any suggestion that the allegations of injury in Count I (2nd Amend. Compl. ¶ 54) are unrelated to Plaintiff's trademark-related claims or the actual consumers of the "Medline Savings" program is off the mark because these allegations are entirely conclusory. *See, e.g., Ryan* 188 F.3d at 860 (conclusory allegations of injury, without more, cannot survive a motion to dismissed); *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1988) (same). Moreover, any such harm is improperly speculative and/or unsubstantiated. *See Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007) (no claim if plaintiff has no damages or right to relief); *Dunkin Donuts*

---

[10] Plaintiff's allegation for Count I under the Telemarketing Act is that it "has been severely injured in its business and property, in an amount well in excess of $50,000." 2nd Amend. Compl. ¶ 54. The only possible direct injuries

*Inc., v. N.A.S.T., Inc.*, 428 F. Supp. 2d 761, 771 (N.D. Ill. 2005) (defendant's counterclaim dismissed due to the "speculative and unsubstantiated claims for damages."); *Bell Atlantic*, 127 S.Ct. at 1964-65 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Finally, because SCS did not monitor the instrumentality of the alleged fraud, it cannot incur secondary liability under the Telemarketing Act for the same reasons it is not liable for contributory trademark infringement. *See Hard Rock*, 955 F.2d at 1148-49 (applying principles under common law tort law in assessing scope of contributory infringement); *SB Designs*, F. Supp. 2d at 913 (expansion of contributory liability beyond manufacturers and distributors "premised on a defendant's direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark.").

## CONCLUSION

WHEREFORE, for the above stated reasons, Defendant SCS respectfully requests that this Court enter an order:

1) Alternatively, dismissing Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(2) because this Court lacks personal jurisdiction over SCS;

2) Alternatively, dismissing Plaintiff's Second Amended Complaint with prejudice and without leave to amend,[11] pursuant to Rules 12(b)(6) or 56, Fed.R.Civ.P., for failure to state a claim against Defendant SCS;

3) Any further relief this Court deems just and proper.

---

this conclusory allegation could relate to are the trademark damages extensively alleged and referenced elsewhere. *See, e.g., id.* ¶¶ 16-23, 46-49, 56.

[11] Dismissal with prejudice and without leave to amend (at least as to SCS) is appropriate in this case. *See Lockheed Martin Corp.*, 52 U.S.P.Q.2d at 1485-86 (district court was well within its discretion in denying leave to amend); *In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2007 WL 551574, at *14 (N.D. Ill. Feb. 20, 2007); *U.S. ex rel. Fowler v. Caremark RX, Inc.*, No. 03 C 8714, 2006 WL 3469537 (N.D. Ill. Nov. 30, 2006).

        Respectfully submitted,

        STRATEGIC COMMERCIAL
        SOLUTIONS (SCS) INC.

By:   /s/ David L. Ter Molen
       John T. Shapiro
       David L. Ter Molen
       FREEBORN & PETERS LLP
       311 South Wacker Drive, Suite 3000
       Chicago, Illinois 60606
       (312) 360-6000

Dated: January 31, 2008

1468645v3/26135-0001